CARLILE, PLAINTIFF IN ERROR, v. HURD, DEFENDANT IN ERROR.

1. STATE TREASURER, POWERS AND DUTIES OF.

The state treasurer is clothed with the right and it is his duty to investigate the legality of every warrant before payment.

2. STATUTORY CONSTRUCTION.

The statute which invests the superintendent of insurance with authority to examine and proceed against insurance companies has no extraterritorial force.

3. SUPERINTENDENT OF INSURANCE, POWERS OF.

The superintendent of insurance, having no power to act outside of the state, has no power to disburse the public money while visiting other states,—regardless of the purpose for which he went. Such expenditures do not constitute legitimate claims against the state.

4. JURISDICTION.

Constitutional questions are without the final jurisdiction of this court, and are never considered, unless essential to the settlement of the rights of the parties to the controversy.

*Error to the District Court of Arapahoe County.*

Mr. J. H. MAUPIN, attorney general, and Mr. H. B. BABB, for plaintiff in error.

Mr. M. B. CARPENTER, for defendant in error.

BISSELL, J., delivered the opinion of the court.

An act of the legislature approved February 13, 1883, (General Statutes, p. 549,) established an insurance depart-

ment. The state auditor was made *ex officio* superintendent of insurance, with power to appoint a deputy, whose powers and duties were defined, but with which we have no concern, except in so far as they are specified in that portion of the section which will be quoted. After providing in detail for the organization of the department, it conferred upon the superintendent certain powers in the following language :

Section 10. "The superintendent of insurance shall have power to examine and inquire into all violations of the insurance law, and may at any time examine the financial condition, affairs and management of any insurance company incorporated by or doing business in the state, and inquire into and investigate the business of insurance transacted, and may require any company, its officers, agents, employees, or attorneys, or other persons, to produce, and may examine all its assets, contracts, books and papers ; may compel the attendance before him, and may examine under oath its directors, officers, agents, employees, solicitors, attorneys, or any other person, in reference to its condition, affairs, management or business, or any matter relating thereto ; may administer oaths or affirmations, and shall have power to summon and compel attendance of witnesses and to require and compel the production of records, books, papers, contracts or other documents by attachment if necessary, and shall have the right to punish for contempt by fine or imprisonment, or both, any person failing or refusing to obey such summons or order of said superintendent."

The remainder of the section gives that officer power to conduct the examination in person, or by deputy, and provides for the imposition of sundry penalties upon insurance companies, or agents, who may refuse to furnish the information which the superintendent is authorized to demand, or to do what he may direct respecting those matters committed to his control. The act afterwards provides for the payment of sundry fees which are constituted an insurance fund. The act directs the superintendent every thirty days to pay all moneys which he may receive into the treasury, and

enacts that they " shall be used for the purpose of defraying the expenses of the insurance department." These expenses are to be paid solely out of the fund arising from the execution of the statute, and not otherwise, and, at the end of the year, whatever balance may remain unexpended is to be passed into the general fund and subject of course to existing legislative appropriations.

The department was organized and in operation on the 14th of January, 1891, when the deputy superintendent of insurance, Nathan S. Hurd, incurred sundry expenses. He contracted two bills. One was for the expenses necessarily incident to his attendance upon an insurance convention held at the city of St. Louis in October, the amount expended being $125. In the same month, under the direction of the *ex officio* superintendent, Hurd visited Knoxville, Tennessee, to examine into the financial condition of the Knoxville Fire Insurance Company, which was doing business within the limits of this state. The expenses amounted to about $195. In conformity with the provisions of the act, Hurd drew a warrant on the state treasury, had it approved by the auditor as superintendent and presented it for payment, which was refused. Hurd thereupon filed his petition in the district court of Arapahoe county, praying for a writ of mandamus to issue against the treasurer to compel him to pay these two warrants. Judgment passed in his favor, the writ was ordered to issue, and the attorney general, representing the state, brought the case here on error. Some of the questions presented would be difficult if they were of the first impression. Most of them have been so completely settled by prior adjudications of our own supreme court, and the tribunals of sister states, that little is left to be done other than to restate the law which has been already declared.

*In limine* the petitioner, Hurd, insists that the treasurer is charged with no other duty than to recognize and pay a warrant drawn on the state treasury by the superintendent of insurance, if it be in the form designated by the act. It is

assumed that since the fees for which the act provides are constituted a fund, known as the insurance fund, which is to be devoted under the plan of the statutes to the payment of the expenses of the department, it is removed, both as to its amount and the settlement of the uses to which it may be properly applied, from the consideration, protection or oversight which may regulate, check, or determine, the disposition of money under the control and supervision of the officer who is by law and the constitution the custodian of the state's moneys. This cannot be true. According to the very terms of the act, neither the superintendent, nor his deputy, is clothed with the disposition of a dollar of the money which may come into their possession by reason of the enforcement of the statute. It goes directly to the state treasury, and into the custody of the officer charged by law with the safe-keeping and disbursement of the state's moneys, and can only be paid out under a warrant, as is the case with all other funds belonging to the government. While it is true that the expenses of the department of insurance can only be paid out of the receipts of the office, and it was the evident intention of the legislature to provide a fund which should be ample to liquidate them, they were still treated as part of the revenues of the state, and, except in so far as they might be absorbed in the payment of legitimate expenses arising from the enforcement of the act, they passed into the general funds of the treasury, to be consumed by the various appropriation acts payable out of the general funds of the state. Under these circumstances the moneys must be taken to be the moneys of the state, properly in the custody of its financial head, and therefore as completely subject to his control as are all other moneys coming into his custody. As to these, it has been very generally held, that he not only has the right, but is charged with the duty, to pass upon the legality and rightful issue of warrants drawn against them prior to payment. This duty is put upon him from the very nature of the duties and responsibilities of his office, and it is one of the

safeguards devised by the makers of our organic law for the protection of the public funds. He is not only clothed with the right to investigate and determine this question for himself before he proceeds to pay, but the duty of investigation is cast upon him by the law which his oath of office obligates him faithfully to discharge., *In re Appropriations*, 13 Colo. 316 ; *Henderson v. The People ex rel. Wingate*, 17 Colo. 587 ; *Institute for the Education of the Mute and Blind v. Henderson*, 18 Colo. 98.

Since it was the duty of the treasurer to consider the legality of the warrant before he proceeded to pay it, it is essential to determine whether his conclusions were correctly reached. It will be remembered that the two warrants on their face purported to cover the expenditures of the deputy superintendent of insurance while he was attending a convention of insurance commissioners at St. Louis, and while he was investigating the financial condition of a foreign insurance company at Knoxville, Tennessee. The invalidity of the warrants springs, if at all, from the fact that the disbursements were not made by the officer while engaged in the discharge of his official duties in Colorado. The act which clothes the superintendent of insurance and his deputy with authority to examine and proceed against insurance companies can necessarily have no extraterritorial force. Under all the decisions these officers are without authority outside the limits of their own state. It is evident that they would be powerless to either compel the production of books and papers, or coerce the foreign insurance companies into permitting them to make an examination into their financial condition, save by the enforcement of some penalty in the nature of a limitation upon their right to do business. Mechem on Public Officers, §§ 508 and 873 ; Cooley's Const. Lim. (6th ed., p. 149) ; *Chandler v. Hanna*, 73 Ala. 390.

Since this is true, it destroys the foundation of the contention that it is to be presumed the legislature intended to confer upon these officers power to act beyond the limits of the state, because of the inconvenience or the impossibility other-

wise to execute the authority which the act evidently intends to give. It cannot be assumed that the legislature intended to bestow what it was powerless to grant. It was unable to give them jurisdiction to act outside of the state's limits, and it must follow that there can be no legitimate inference of a legislative intention that any part of their duties should be performed elsewhere than within that jurisdiction. Express authority is essential, and this must be found in the very terms of the enactment. A careful consideration of the section quoted will serve to demonstrate that no express authority was given. Doubtless the financial condition of foreign companies can be much more economically, safely and accurately ascertained where their principal offices are situate. But if the legislature intended to give the insurance department authority to proceed by a sort of roving commission all over the country to look into the status of all companies doing business within the limits of Colorado, the right must be expressly conferred, and cannot rest on presumptions and arguments *ab inconvenienti*. They are permitted to do many things to thoroughly investigate the business and financial condition and affairs of any insurance company doing business within the state; and they are clothed with ample power to enforce the production of whatever information may be essential to enable them to reach a safe and sound conclusion. It is probably to be regretted that the legislature failed to grant the authority to make these examinations at the home offices of the companies, and to provide for the payment of the expenses necessarily incident to the investigation, for although the grant could only cover and legitimate the expenses, the enforcement in case of refusal would lie in withdrawing any permit which might have been issued. The right, however, was not conferred, and these officers could not rightfully disburse any of the state's moneys in payment of expenses incurred while visiting other states, regardless of the purpose for which they went, or the usefulness of the investigation. It is thus evident that the treasurer correctly decided that these warrants were

not legitimate claims upon the public treasury, and he rightfully refused to pay them.

It was very earnestly contended and argued on behalf of the state that under no circumstances .could those warrants be paid, since the legislature had failed to make any appropriation covering the expenses of the office.   This contention is based upon that provision of our constitution which declares that " no money shall be paid out of the treasury except upon appropriations made by law and on warrant by .the proper officer in pursuance thereof."   Constitution, art. 5, § 33.

The case has been fully disposed of by the antecedent discussion, and a determination of this constitutional question is wholly unnecessary.   Constitutional questions are entirely without our final jurisdiction.   They are never considered or determined by this court, unless essential to the settlement of the rights of the parties to the controversy.   In all such cases it is of course our duty to determine whatever questions may be presented, but, since our declarations on these subjects lack the ·force of final determinations, it has always seemed to us both wise and proper to decline to decide them unless the decision be unavoidable.   We therefore do not determine that question in this case.

For the reasons above expressed, the judgment of the court below ordering the writ to issue must be reversed.

*Reversed.*