[No. 1576.]

## Parks (Lowell Substituted), Auditor of State, v. Hays.

1. Office and Officers—Salary—Appropriation.

Where a statute creating an office provides that the salary shall be paid "out of any moneys appropriated for that purpose," the statute itself is not an appropriation, and until an appropriation is made no salary can be paid to the officer.

2. Same—Auditing Board.

Where by act of the legislature a fund was created for the purpose of paying a casual deficiency in the revenue and a board was created by the act, by whom all claims should be audited before they could be paid out of the fund, *mandamus* could not be maintained against the auditor of state to compel him to issue a warrant against such fund on a claim, unless it had been presented to and allowed by the auditing board.

3. Same—Statutory Construction.

Where an act of the legislature created a fund to pay a casual deficiency, creating a board to audit all claims to be paid out of said fund, and providing that said act should not be revised, amended or repealed until the total amount of indebtedness therein provided for was wholly paid, and a subsequent act of the same legislature appropriated a certain amount of said fund, or so much thereof as might be necessary to pay the balance of the salaries of the inspector of metalliferous mines and his assistants, and directed the auditor to issue his warrants to the parties, naming them, for the sums then justly due, and from time to time as the same might become due, but in naming the amount to be paid one of the assistants, the auditor was directed to draw his warrant for a certain sum, without the qualifying words, "now justly due and from time to time as the same might become due"; *held* that the two acts should be construed together, and that it was not intended to appropriate a specific sum to the assistant inspector, but that it was intended to provide for the payment of such amount as the auditing board might determine was due.

4. Appropriations—Mandamus.

Legislative appropriations are not conclusive on the auditor and treasurer of the state, but they have the power and it is their duty to determine the legality of an appropriation, and before a *mandamus* would issue to compel the auditor to issue a warrant upon a claim, the claimant must show in his alternative writ the character, amount and source of the claim, and state as in a pleading a cause of action,

in order that it might be determined on the issues raised by the answer whether or not the claim was a legitimate one.

5. SAME—SPECIFIC FUND.

Where an appropriation is made from a specific fund and the fund has been legally exhausted, the auditor cannot be compelled to issue a warrant against such fund.

6. OFFICE AND OFFICERS—ACTION—SUBSTITUTION.

In an action against an official to compel him to perform an official duty, a change in the person holding the office does not necessarily defeat the action, but it may be continued against his successor.

7. PROCESS—APPEARANCE—WAIVER.

The fact that an alternative writ of *mandamus* against an officer did not properly describe such officer, is waived by the appearance and answer of the officer in which he set forth his proper official title.

*Appeal from the District Court of Arapahoe County.*

Mr. B. L. CARR, Attorney General, and Mr. CALVIN E. REED, of counsel, for appellant.

Mr. CLINTON REED, for appellee.

BISSELL, J., delivered the opinion of the court.

Presumably on a sufficient and proper petition filed by the appellee, the district court issued its alternative writ of *mandamus* to the then state auditor, Clifford C. Parks, directing him to show cause why a peremptory writ should not go, commanding him to issue a warrant for $649.32, as and for money due Hays as an assistant inspector of metalliferous mines.

The attorney general on behalf of the officer who represents the state on this appeal presents a number of objections to the alternative writ as a sufficient statement of a cause of action. The practice which the applicant pursued is attacked in divers ways, but except for its possible usefulness in subsequent proceedings by way of establishing it, this query could be passed without notice. Since as we view it, the case turns on the construction of some statutes and the sufficiency of the writ as a pleading in one particular we shall only consider these matters. In the statement we shall only

recite the things which are contained in the alternative writ and in the answer, treating them as facts for the purpose of the decision because judgment was rendered on the pleadings. This cannot be questioned because there can be no dispute about these pivotal matters. The office of inspector of metalliferous mines is and has been treated by the supreme court as a creature of statute. The constitution provides for the appointment of a commissioner of mines but no such office has ever been established by legislative enactment. The inspection of metalliferous mines was provided for by special act and the offices of inspector and assistant inspector created. Henry L. Acker was appointed inspector by the executive in 1893, and J. H. Goldsworthy and Maurice C. Hays were appointed assistant inspectors to fill these offices. The legislature in 1893 made no appropriation for the payment of the salaries of the inspector and his assistants. It would appear that they remained in office, discharged the duties, and from time to time and to an extent which need not be directly stated, received from the proper state officers certificates of indebtedness for the salaries and expenses which were provided for by the act creating the bureau. Matters ran along in this way until the legislature met in 1895 when the financial condition of the state became the subject of serious discussion and legislation. By reason of the diminution of the public revenues and as it would appear a reduction in the assessed valuation of the property in the state a deficiency existed; there was a lack of funds to pay the expenses of a number of officials whose offices were provided for by the legislature and for the support and maintenance of various institutions, and there was not enough to pay the debts which had been created in the purchase of supplies and for other matters connected with the state government. These circumstances led to the passage of the acts which are to be construed and by which the rights of Hays must be determined. Probably the form which this legislation took in one aspect of it, as it will be considered, proceeded from an antecedent

adjudication by the supreme court.  *Goodykoontz v. Acker*, 19 Colo. 360.

Therein it was clearly decided that under the statute creating the office of inspector of metalliferous mines that officer could only receive his salary and expenses out of any moneys which might be appropriated for that purpose.  These words of limitation were held determinative of the legislative purpose, and that while no set form of words was essential to constitute an appropriation, it must appear that there was the legislative intent to make it in order to entitle the party to receive any portion of the public funds in the payment of his salary.  It will be observed this was a suit by the inspector to recover his salary for a portion at least of the same period for which the salary is claimed by the relator to have been earned by him as an assistant inspector under Acker.  It is therefore clear that since there was no appropriation to pay Hays's salary for the years 1893 and 1894 until the act of 1895 was passed, Hays was without a legal claim and was without the right to maintain *mandamus* against the auditor to compel the issuance of a warrant entitling him to draw the money from the public treasury.  We regard this matter as one of great and controlling significance in the interpretation of the subsequent statutes.

In 1895 the legislature attempted to make provision for this deficiency in the public revenues and to liquidate the claims of the public officers who had been without salary, and to pay the expenses of the various public institutions which had been without funds, and to liquidate the debts which had been incurred in carrying on the affairs of the state.  The first act that was passed was approved April 8, 1895.  It is chapter 77, Session Laws of 1895, page 178.

In general terms that act provides for the creation of an additional bonded indebtedness.  There is a limitation on the power of the legislature to create a bonded debt, but it need only be referred to in this general way because its construction is not involved since it has practically been determined

so far as we are able to see by the supreme court.  *In re Casual Deficiency*, 21 Colo. 403.

The act of 1895 is attacked by the attorney general as being unconstitutional because many of the matters provided for by the act including the one under consideration, do not come within the definition of a casual deficiency.  We decline to consider the question, nor do we regard it as necessarily or actually involved.  In that decision the very matter now being determined was presented to that court.  The governor under his authority put a question to the supreme court involving part of these identical matters of salary and expenses.  Having these questions before them, the court decided that upon the facts stated in the communication, there was at the time of the passage of the act a casual deficiency which conferred on the general assembly the authority to contract a loan by the issuance of bonds to pay the indebtedness referred to.  Just exactly how far that court intended to go, and whether all matters contained in the question can be said to have been conclusively answered by the court's response we are not able to determine.  Since the matter of the salaries of the inspector and his assistants was involved and presented by the question, we must assume the court determined that the nonpayment of those salaries did create a casual deficiency for which the legislature could provide by the creation of an additional indebtedness covered by the bonded issue provided for by the act.  Since this is our conclusion respecting the force and effect of the response to the executive inquiry we decline further to discuss or pass on the question.  We treat it as settled and the matter not open for consideration.

Bearing this in mind then, the act approved April 8, provided for the issuance of $175,000 worth of bonds.  According to the terms of the first section, there was a casual deficiency in the revenue resulting in just claims against the state which were unpaid.  The claims were recited to be for various matters including rent and publication, expenses of various boards and the salary and expenses of the metalliferous mine inspector and assistants.  Thus by the express terms

of the act this identical matter was intended to be provided for by the legislature. We now come to the general terms of the enactment which will only be stated in so far as they may be regarded as material or as necessary to the conclusion of our decision. The issue covered $175,000. It was divided into two parts, and those parts were applicable to two specific purposes and those only. Seventy-five thousand dollars worth of the issue was to be devoted to the payment of the expenses of an insurrection. The other $100,000 was to be applied to the liquidation of the various claims and debts referred to in the first section. Manifestly it was impossible for the legislature to devote the time and labor necessary to the investigation of all these various items of expenditure and debt, and to guard against an unwarranted and unlawful expenditure of the money the act provided by section 7 that all claims should be audited by a board which the act established. This board consisted of the governor, attorney general, and state auditor, to whom the investigation of the outstanding bills and certificates of indebtedness for the fiscal years of 1893 and 1894 were referred. According to the averments of the answer the board organized and proceeded to discharge its functions. It passed on all bills and claims presented by persons who were provided for by the act, and who held claims against the state which were legitimately payable out of this fund, and apportioned the fund from time to time among the claimants and on the certificates issued by that board, the auditor issued his warrants and the parties received their money. The entire fund with the exception of $54.52 was paid out on these certificates and on warrants properly issued thereon. All the claims which the relator Hays had and which were covered by the act, were apparently presented to that board and allowed, and he received certificates on which warrants were ultimately issued whereon he received according to the statement of the alternative writ and the statements of the answer $1,273.70. We must assume, because it is so stated in the pleadings, that the board passed on all the certificates and on all the claims which he presented to the board

for payment, and allowed whatever was thus presented to the extent stated. Hays did not afterwards make any further or other claim to that board, and the board having distributed the entire sum resulting from the sale of the bonds except $54.52 on the 28th of December, 1895, adjourned without day. It must be likewise assumed that the auditor issued every warrant which he was bound and entitled to issue under the action of that board, and that Hays presented no other claim to that board for allowance which was either allowed or disputed. If he had any other claim than those which were audited by the board, he never presented it to them and demanded action thereon, nor did he take any steps to compel action by the auditing board with respect to the claim which he now seeks to enforce. We therefore have this condition: A fund was created by this act. Its disbursement was determinable by a board which it created, and it could only be expended on their action and on their certificates, and thereon alone was the auditor at liberty or had he the right to issue warrants payable out of that specific fund. It must be remembered that according to the terms of the act, the funds resulting from the sale of the bonds were separately deposited and separately entered on the books of the state treasurer as funds resulting from the bond sale and disbursable by him in accordance with the terms of the act on warrants drawn by the auditor and based on certificates which that board had issued. It would then necessarily follow that in order to entitle Hays to any further payment, he must have both alleged and proved that he presented a claim to that board to be audited, which they audited and on which the auditor had refused to draw a warrant, or that the board refused to act thereon and allow it; in which latter event it was his duty to proceed against the board and compel action. There is but one possible contention otherwise, and that is on the basis of a later act of the same legislature which was approved on the 30th of the same month at that session. In the construction of this act, we must regard not only its direct terms, but also another section found in the act of April 8, which is section 8.

This section is, " this act shall not be revised, amended or re-pealed until the total amount of indebtedness herein provided is wholly paid and discharged." We do not attempt to deter-mine the obligatory force of this section as to subsequent leg-islatures, nor do we determine whether it was an absolute limitation on the power of the body who passed it as to their later legislation. In other words, we do not decide whether it was an absolute and unrepealable restriction on the legisla-tive authority, but we do determine that it must be consid-ered in construing the act of April 30. In other words, it is of controlling force in the decision of the question whether the subsequent act is to be taken as a repeal by implication of the earlier enactment. If the act of April 30 had been a direct repeal, then the question as to the force, scope and extent of this limitation would have been necessarily involved. The subsequent act did not attempt to repeal, modify or change it as we look at it, and it is only by construction if at all that the act of April 30, can be held restrictive or in any wise modificatory of the earlier act.

We now come to the act of April 30, Session Laws, 1895, chapter 2, page 26. · The first section of this act appropriates out of the casual deficiency bond fund the sum of $9,708.34, or so much thereof as may be necessary for the purpose of paying the balance of the salaries and expenses of Acker, Goldsworthy and Hays. These are the terms of that sec-tion, except the concluding part of it, which simply pro-vides for the division of that sum between the parties, and appropriates a certain amount to Acker, and to Goldsworthy and to Hays, as the same may become due. We do not re-gard this latter part of the section as at all significant for the purposes of construction. It is thus plain that the ap-propriation was out of a specific fund, and a specific fund only. There is no method of construction by which that appropriation can be held payable out of the general rev-enues of the state. It was a specific setting apart of so much of the deficiency bond fund as was necessary to pay the salaries and expenses of those three men. The division

was evidently only resorted to by the legislature in order that the computation should be made on the basis of the salary which had been provided for by the act creating the office and providing for the payment of its expenses. When we come to the next section, the auditor was directed to draw his warrants for the several sums now justly due, and from time to time as the same may hereafter become due in favor of Acker for the sum named, in favor of Goldsworthy for the sum named, and in favor of Hays for a particular sum, to wit: $1,750. When it came to that part of the section referring to Hays, it simply directed the auditor to draw his warrants in favor of Hays for the sum of $1,750, without the words which qualified the direction as to Acker and Goldsworthy, that the warrants should be for the several sums "now justly due and from time to time as the same might become due." Had these words preceded the clause referring to Hays, there would have been no matter of construction. As we look at the act, there is, even under these circumstances, no room for doubt as to the legislative purpose. In the first place, we deduce from the antecedent decision of *Goodykoontz v. Acker*, the reason for the passage of the act. The legislature were advised by that decision that, although they might provide for the issue of bonds for the liquidation of the casual deficiency, and though the act itself might direct in express terms the payment of these claims of the inspector and his assistants, yet the casual deficiency bond act could not be taken to include them. The parties had none. The supreme court had already decided that though the parties had filled the office, discharged the duties and paid out moneys, as they had a right to do, yet they had no demand against the state in the absence of an act which made a specific appropriation for this purpose. Since these claims were recognized as just, and the officers were entitled to the money, the legislature in obedience to that decision passed this act of April 30 to cover that identical matter and made an appropriation out of the bond issue, so that Acker and his assistants would become entitled to a

distributive share of this fund.   The legislature consequently passed the act appropriating the sum named, or so much of it as was necessary for the payment of these accrued claims of Acker, Goldsworthy and Hays.   As we look at it, there was no attempt on the part of the legislature to ascertain or determine the legality or extent of the claims of any one or all of the parties, except in general terms it provided that within the limit prescribed an appropriation of the fund should be made to pay them what might be found to be due.   We do not from the tenor of the act conclude the legislature determined the exact sum due these parties, as by the earlier act they had directly and distinctly provided a board to whom was confided the duty and power to pass on these claims and issue certificates on which the auditor should issue his warrants.   As we look at it, this is the natural, legitimate and proper construction of the two acts taken conjointly.   We do not undertake to say what would have been the result had the act of April 30 stood by itself.   It might then have been necessarily held that the auditor was bound to issue his warrants to those three parties for those specific sums on the presentation of proper proof and vouchers.   We do not conclude the legislature intended to appropriate these specific sums to these individuals, because it is not a direct appropriation of $9,708.34, which would perhaps compel this conclusion and entitle the parties to present their vouchers and demand their warrants, but it is only an appropriation of that sum, or so much of it as was necessary to pay the salaries and expenses.   It is thus clearly exhibited that the legislature did not attempt to determine the amount either of the salaries or the expenses, and they could not have intended by the language to direct the auditor absolutely to issue the warrants.   The same idea is carried out in section 2.   The auditor is only directed to draw warrants for the sums justly due, or which might from time to time become due, a limitation which we think restricts his authority, not only with reference to Acker and Goldsworthy, but also with reference to Hays.   When we remember that sec-

tion 8 of the act of April 8, provided that the act "should be in no wise revised, amended, or repealed," we conclude that it was the purpose of the legislature simply to pass this appropriation act to avoid the difficulty suggested by *Goodykoontz v. Acker*, and legalize the claims of these parties in so far as they might be ascertained by the board provided for by the earlier act. The two must be taken together and regarded as a mode or method adopted by the legislature to provide for this deficiency, and specifically to provide for the payment of the salaries and expenses of these officers. If this be the proper construction of these acts, as we believe, the conclusion is inevitable.

It nowhere appears in the alternative writ that Hays ever presented any claim to the auditing board which was disallowed. According to the terms of the answer his claims so far as presented were allowed and certificates issued and the auditor drew his warrants and the relator got his money. If he had a claim for $649.32 he did not present it to that board and have it allowed or rejected. He never presented it, but he now insists notwithstanding that fact that since there was a difference between what he got, and the amount assigned to him in the division of the appropriation by the act of April 30, he is entitled to proceed against the auditor and compel him to issue his warrant therefor. This cannot be true if his claim was the subject-matter of ascertainment by that board. We have concluded that such is the necessary construction of the act and since in direct terms his claim was provided for by the act itself, and the other was but a necessary appropriation in order to legalize his claim, we conclude that the earlier act controls in the method of determination and settlement, and to it alone must we look to ascertain the relator's rights. When we reach this conclusion the balance of the way is tolerably plain. The supreme court very early decided the question thus presented. As commissioner I wrote the opinion but it is cited as a controlling decision of the supreme court because under the system then in vogue whatever the commissioners determined was subject to ap-

proval or disapproval by that tribunal, and its sanction made the commissioner's decision the law of the state. *Schwanbeck v. People ex rel.*, 15 Colo. 64.

By that decision it was determined that wherever a power was confided to a board and its determination was made a prerequisite to the validity of a claim, the party who sought to enforce it by proceedings against the auditor to compel him to issue a warrant must by the terms of his alternative writ exhibit the fact that he had procured the action and approval of the board, and must show that he had presented his claim thus duly approved by the auditing body before he could compel action. If our construction of the act of April 8, is correct the principle of that decision covers this case. There was an auditing board provided by this latter act to which was confided the full power of determination. Parties who had claims against the state were to be paid out of the proceeds of the sale of those bonds. Parties were bound by its provisions to present them to the board for allowance or rejection, and failing to do either one or the other or proceed against it to compel action, the parties are without remedy as against the auditor. This is entirely conclusive of this appeal. It nowhere appears that any claim which Hays had and presented to the board was disallowed. If the present claim existed he failed to exhibit it. Without the audit of that board he had no claim on the moneys resulting from the sale of those bonds covering the casual deficiency, which could only be expended and to which he was only entitled because of the special appropriation made applicable to that fund in order to provide ways and means by which his debt should be paid. No other result can be arrived at unless the act of April 30 is taken as a direct appropriation of $1,750 for Mr. Hays and that by reason of that act he was entitled to demand of the auditor the issuance of a warrant for that sum on no other voucher than his own and no other proof than his own claim that the sum was due him. We do not believe that this is an inevitable and absolute necessary construction and it ought not therefore to be adopted.

There is still another and further reason why judgment should not have been granted even though the foregoing position be not well taken. It is not exhibited by the terms of the alternative writ and it is clearly shown to the contrary by the terms of the answer that Hays presented no voucher to the auditor and no proof of a claim which the auditor was bound to allow unless we concede that the appropriation was for the specific sum. Both the treasurer and the auditor are clothed with great powers to pass on and determine the sufficiency and validity of claims which parties present against the state. The supreme court has gone a long way in this direction. That court has held that legislative appropriations are not conclusive on these officers, and gives to them the power and imposes on them the duty to determine whether the appropriations are legitimate or illegitimate, constitutional or unconstitutional. *In re Appropriations*, 13 Colo. 316.

It was therefore incumbent on the relator by the terms of his alternative writ to state the character, amount, and source of the claim which he presented, and state, as in a pleading, his cause of action in order that it might be determined from the issues raised by the answer and the proof offered, whether the claim was or was not a legitimate one. This was a matter which the auditor had a right to consider and a right to determine. If he failed in his duty, the party must state a cause of action against him that issue might be taken and proof offered. In this aspect of the case the judgment ought not to have been entered. The alternative writ exhibited nothing but a naked statement of the appropriation and in fact the relator relied entirely on the theory that the act of April 30, was a specific appropriation of $1,750, and that the auditor was without discretion. Under the decision in *In re Appropriations*, this could in no event be true because if the auditor should determine on inspecting the voucher and the proof that the claim was not constitutional in the sense of being a casual deficiency for which the legislature could provide, he not only had the right but it was his duty to reject the claim regardless of the legislative direction. Whether this be or

be not true, we still hold that on its face the alternative writ
must contain averments showing a good cause of action in
the sense of a statement of the claim which the party seeks
to enforce against the state.   It lacked those averments, was
therefore insufficient, and the judgment on the pleadings
ought not to have been entered.

The answer states and we must take it as true that the
$102,000 resulting from the sale of these bonds and appli-
cable to the payment of the claims designated in the first sec-
tion of the act has been absorbed by warrants lawfully issued
on audit by the board.   The board acted within the scope of
its authority.   The auditor violated no rule but complied
with the law when he issued his warrants to pay the claims
which the board had passed on.   Therefore the appropriation
of April 30 was only an appropriation running to that identi-
cal fund, and the auditor can lawfully issue no warrant which
will be a claim on the general revenues of the state, and which
will be payable otherwise than out of the casual deficiency
fund.   Since this is true and the fund has been lawfully and
legally exhausted, we do not see how, when the relator has
failed to act, he can now demand a warrant from the auditor.
He did not present any claim to the auditing board which
was not paid.   Neither did he, while those funds were in the
treasury, present his claim to the auditor and demand a war-
rant payable out of that fund.   We are quite unable to see
how the relator could sit idly by, even if he had a claim, and
permit the disbursement of the fund and now demand of the
auditor the issuance of a warrant which there is no money to
pay and which the auditor cannot lawfully or legally issue.
Suppose the auditor does issue his warrant for $649.32, it
will only be issued on a fund which has been exhausted and
in which there is no money.   It is a fund which has been
lawfully and legitimately exhausted.   It was paid out on
warrants which the auditor had a right to draw and which
were as against him conclusively determined to be valid by
the action of the board to which was committed authority to
determine the validity of the claims payable out of it.   Hav-

ing done only his duty, we are wholly unable to direct him to do an unlawful thing, issue a warrant on an exhausted fund which will apparently make a claim against the state which the relator is without right to enforce. His claim was only against the casual deficiency bond fund. That has been legally and legitimately exhausted. If the relator has lost any rights, or has failed to collect his pay, it has been by reason of his neglect and he may not now call on the state auditor or the courts to aid him in the premises. We therefore conclude for this reason that judgment ought not to have been entered on the pleadings.

The state complains of the mode adopted by the relator to bring Lowell, the present appellant, into the litigation. It will be remembered that the proceeding was begun against Parks who was then state auditor and it ultimately continued and was concluded as against Lowell who was his successor in office. Lowell was brought in on a motion to substitute because the proceeding was against the official rather than the person, and because in the alternative writ the order ran against Parks without describing him as auditor, and the attorney general therefore contends that the proceedings should for these reasons be dismissed. We cannot assent to the conclusion. As we understand it, both courts have considered the rule to be that where a proceeding or an action is begun against an official to compel the performance of an official duty or the discharge of an official obligation, a change in the person holding the office will not of necessity nor even generally defeat the action, but it may be continued against the successor, and the judgment if recovered be made ultimately effectual. The defect in the alternative writ in the description of the officer is unimportant because Parks came in and answered and his answer described him as state auditor, and he rested his defense on his right as such to resist the relator's claim. This would cure any defect in the alternative writ where the motion was made for judgment on the pleadings and it appeared that the proceedings were started against the defendant as an individual and he answered as auditor

and set up a defense which he could only interpose because of his official capacity. The same answer can be made and with like effect to the objection to the procedure adopted to bring Lowell in. The state insists that there should have been something either by way of service of the order or the service of some writ, either one or both of which would answer the purpose of process in order to bring the incoming auditor into the case. We do not intend in this case to lay down what the exact practice should be under other conditions, or under conditions which might generally exist. It is a wholly unimportant consideration because after the motion which Lowell made was disposed of, he filed an answer, and we know of no reason why the filing of an answer by that officer should not be quite as effective to estop him from complaining of the want of process as a like proceeding would on the part of an individual who came in and took issue and then complained that no summons had brought him into court. In the one case as in the other, the appearance is equally as effective to give the court jurisdiction.

This disposes of the errors discussed in the briefs of counsel which require discussion or decision. The judgment ought not to have been entered. As we view the record it is impossible to make a case on the proof which would entitle the relator to a peremptory writ, and final judgment will therefore be entered in this court in favor of the appellant. Judgment reversed and final judgment ordered.

*Reversed.*

THOMSON, P. J., dissents.