[No. 7667.]

THE PEOPLE EX REL. V. LEDDY.

1. STATUTES—*Conformity with Constitutional Requirements—Presumptions*—An enrolled bill found in the office of the Secretary of State, bearing the signatures of the presiding officers of the two houses of the General Assembly, is *prima facie* the law.

Whoever assails it has the burden of proof.

But it may be shown by the journal of either house that the constitutional requirements were not observed, in which case that which appears to be the law is not so.

2. LEGISLATIVE JOURNALS—*What Must Appear Therein*—Where the constitution is silent as to whether a particular act or formality required in the passage of a bill shall be entered upon the journal, the matter is in the discretion of the house, and in such case the presumption arising from the enrolled bill lodged with the Secretary of State, is not overcome by the silence of the journal. Otherwise, as to those matters which by the express command of the constitution are re-

quired to be recorded, e. g., the names of those voting on the final passage.

3. ——*Printed Copy of Legislative Journals*—The copy of the journals of either house of the General Assembly, printed under authority of the statute (Rev. Stat. sec. 2907) is *prima facie* evidence of the action of the house, liable to be overcome by the original journal.

4. ——*Memoranda Kept by the Officers or Clerks of the House,* may sometimes be resorted to to determine whether in the enactment of what appears as an enrolled bill, the requirements of the constitution were observed; but not where the legislative body has caused such original memoranda to be extended, amplified and recorded, and approved the result as its journal.

Whatever the legislative body treats and accepts as its journal, is so, and is not to be aided, supplemented or contradicted by reference to loose papers and memoranda kept by the clerk, and which require parol testimony to explain and identify them.

The courts have no authority to receive such evidence and so amend the journal by importing into it something which was never there.

5. ——*Mutilation or Falsification of the Journals*—Evidence *aliunde* the journal may be received to show that something once part thereof, has been abstracted or lost.

*Error to Denver District Court.*—Hon. CARLTON M. BLISS, Judge.

Mr. B. M. MALONE, Mr. W. A. MERRILL, Mr. FRED A. SABIN, Mr. F. L. COLLOM, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, attorney general, Mr. CHARLES O'CONNOR, Mr. PHILIP W. MOTHERSILL, assistant attorneys general, for the people. *

Mr. ALLEN M. LAMBRIGHT and Mr. MORRISON SHAF-ROTH, *Amici Curiae*.

Mr. JUSTICE WHITE delivered the opinion of the court:

The People, on the relation of the board of county commissioners of Prowers county, instituted mandamus proceedings in the court below to compel Michael A. Leddy, as auditor of the state, to issue to Prowers county a state warrant, pay-

able out of the "State Road Fund," for the sum of $1,500, a voucher having been duly issued therefor in accordance with the provisions of a purported act of the general assembly, Session Laws of 1911, chapter 23, p. 79, and known as "House Bill No. 200."

The defense was, that the purported legislative act was not passed in conformity with section 22 of article V of the constitution, which reads as follows:

"Every bill shall be read by title when introduced, and at length on two different days in each house; all substantial amendments made thereto, shall be printed for the use of the members before the final vote is taken on the bill, and no bill shall become a law except by a vote of a majority of all the members elected to each house, nor unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal."

The court found the facts in favor of respondent, denied the writ, and assessed the costs against the petitioner, who brings the cause here for review.

As every enrolled bill, signed by the proper officers and lodged with the secretary of state, however repugnant to the constitution, has the appearance, semblance and force of law, the general rule is, that public officials shall obey its terms until some one, whose rights it invades, complains, and calls in the aid of the judicial power to pronounce it void as to him, his property or his rights.—*People v. Ames*, 24 Colo. 422; *Ames, Co. Assess. v. The People, ex rel.*, 26 Colo. 83; *People v. Airy*, 21 Colo. 144, 155; *Newman v. People*, 23 Colo. 300, 311; *State ex rel. New Orleans, etc., v. W. W. Heard, State Auditor et al.*, 47 La. 1679.

However, it may be that the state auditor comes within that class whose rights may be injuriously affected, or that the nature of his office is such as to require him to raise the question of the validity of the apparent law when called upon to issue his warrant for money appropriated thereunder.—In *Re Appropriations*, 13 Colo. 316; *Henderson v. People*, 17

Colo. 587; *Parks v. Hays,* 11 Colo. App. 415, 427; *Carlile v. Hurd,* 3 Colo. App. 11, 15; *State, ex rel. New Orleans, etc., v. W. W. Heard, State Auditor et al., supra,* as annotated in 47 L. R. A. 512.

Whatever be the correct rule in that respect, or whether the decisions establish a particular rule in this jurisdiction, we shall not here determine, as the question is neither presented in the pleadings nor discussed in the briefs.

It is alleged that the bill is unconstitutional for the following reasons: (1) It was not read a third time in the senate; (2) It was never placed on final passage therein; (3) It never received, on final passage therein, a majority vote of the senators elected; (4) The vote therein on final passage was not taken by ayes and noes; (5) The names of the senators voting thereon were not entered on the journal of the senate.

While a properly signed, enrolled act of the general assembly, filed with the secretary of state, is, *prima facie,* the law, nevertheless under our constitution, and court decisions, the proof may show otherwise, and it is competent to establish by the journals of either house that a particular act was not passed in the mode prescribed by the constitution, and when so proven, that which appeared to be the law has no validity and is not the law at all.—*Colorado Constitution,* sec. 22, art. V.; *In Re Roberts,* 5 Colo. 525; *Robertson v. The People,* 20 Colo. 279; *Rio Grande S. Co. v. Catlin,* 40 Colo. 450, 453.

However, in making such proof there are certain rules to be observed, some of which are as follows: Where the constitution is silent as to whether a particular act, which is required to be performed in the passage of a bill, shall be entered on the journal, it is left to the discretion of either house to enter it or not; and, in such case the *prima facie* proof arising from the enrolled bill lodged with the secretary of state is not overcome by the silence of the journal on the subject.— *Mass. M. L. Ins. Co. v. Colo. L. & T. Co.,* 20 Colo. 1; *Andrews et al. v. The People,* 33 Colo. 193, 199.

But where the constitution makes it an essential pre-requisite to a bill becoming a law, that the names of those voting upon its final passage be entered on the journal, the production of the journal, intact, which fails to show such entry, overcomes the *prima facie* proof that the purported legislative act is the law. In such case it affirmatively appears from the journals by necessary implication, if not expressly, that the provisions of the constitution were not observed.— *Andrews et al. v. The People, supra.*

These rules are recognized and applied in *State of Illinois v. Illinois Central Railroad Company,* 33 Fed. 730, 762, where it is held, that the signatures of the presiding officers of the two branches of the legislature, together with that of the executive, to a purported legislative act, raises a strong presumption of regularity in its passage, and such presumption is not overthrown by the journal failing to show the doing of some act which is simply required to be done by the constitution; but is overthrown by the journal failing to show the doing of some act which the constitution requires to be entered in the journal. The court therein quotes from *Supervisors of Schuyler Co. v. People,* 25 Ill. 181, as follows:

"The constitution does require that every bill shall be read three times in each branch of the general assembly before it shall be passed into a law; but the constitution does not say that these several readings *shall be entered on the journals.* Some acts performed in the passage of laws are required by the constitution to be entered on the journals, in order to make them valid, and among these are the entries of the ayes and nays on the final passage of every bill; and we held in the case of *Spangler v. Jacoby,* 14 Ill. 297, that, where the journal did not show *this,* the act never became a law. But, where the constitution is silent as to whether a particular act which is required to be performed shall be entered on the journals, it is then left to the discretion of either house to enter it or not; and the silence of the journal on the subject ought not to be held to afford evidence that the act was not

done. In such a case we must presume it was done, unless the journal affirmatively shows that it was not done."

Cooley's Constitutional Limitations, pp. 162, 163, in announcing the same doctrine, says:

. "If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence, and adjudge the statute void. But whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of a legislative body; it will not be presumed in any case, from the mere silence of the journals, that either house has exceeded its authority, or disregarded a constitutional requirement in the passage of legislative acts, *unless where the constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered.*"

Applying these rules to the legislative act under consideration, the objections interposed as to its constitutionality are eliminated, except solely the fifth, raising the question as to whether, upon the final passage of the bill in the senate, the names of those voting thereon were entered on the journal. Indeed, respondent, upon whom rests the burden of establishing the invalidity of the act, concedes the law to be as hereinbefore stated, and relies solely upon the last mentioned objection.

The constitution, art. V, sec. 13, requires, that "Each house shall keep a journal of its proceedings," etc., and sec. 22 thereof declares, *inter alia,* that "no bill shall become a law * * * unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal."

By sec. 2907 R. S. the secretary of state is required to have copies of the legislative journals of each house published, certifying to the correctness of such copies. And the same

section provides, that "the said journals, when printed and certified as aforesaid, * * * shall be taken and deemed to have been published by authority of the state of Colorado, and shall be taken and held as *prima facie* evidence of the original records."

· The respondent introduced in evidence, intact, the printed copies of the legislative journals prepared by the secretary of state, under the above statutory enactment, for the session in question, and there did not appear therein an entry of the names of the senators voting on the final passage of the bill. He thereby made a *prima facie* case, subject, nevertheless, to be overcome by the production of the original journal showing the required entry. The copy of the journal, so published, is *prima facie* evidence only of the records as made, and the presumption of its accuracy may be overcome by any competent and satisfactory proof.—*Rio Grande S. Co. v. Catlin, supra; Portland G. M. Co. v. Duke,* 191 Fed. 692.

Respondent, however, did not rely upon such *prima facie* case, but introduced in evidence the joint rules of the general assembly for that session, with reference to the keeping and making of its journals, and likewise two documents, designated in evidence as "Exhibits 1 and 2," the former purporting to be the official journal of the senate, and the latter that of the house of representatives. It is with the former alone that we are here concerned. There is no record therein of the final passage of the bill or entry of the ayes and noes of the senators voting thereon, as required by the constitution, or at all.

On behalf of petitioner there was presented, as constituting the whole or a part of the journal of the senate, certain original memoranda made by various clerks as the business of the senate was transacted. This memoranda, designated in evidence as "Exhibits B and F," if it constitutes the senate journal, might, if aided by parol evidence, be sufficient to prove that the ayes and noes had been taken upon the final passage of the bill and entered on such memoranda, but with-

out parol evidence would prove nothing, and has no significance whatever.

While it is true that sometimes the original memoranda and documents "constituting the material for the journal," are fastened together, and constitute the journal to which the courts resort in order to determine whether an enrolled bill has been duly passed, as in *Re Roberts, supra,* it can not be so used when the legislative body itself has caused "the original material for the journal" to be extended, amplified, copied into a book, and approved as its journal. Under such circumstances, the latter document "becomes the authoritative journal by which the existence of legislative acts is tried." Sutherland's Stat. Cons., Vol. 1, sec. 46. In *Montgomery Beer Bot. Works v. Gaston,* 126 Ala., 425, 443,—a case quite similar to this,—in speaking of the legislative journal required to be kept by the constitution, it is said:

"Whatever else it may mean, it certainly does refer to the record which the legislature keeps and is required to keep of its proceedings, and, like all other records required by law to be kept, it imports absolute verity—*The State v. Buckley,* 54 Ala. 613. It is one, and not two or duplicate journals or records that must be kept; and it can not be that both the batch of papers and the two bound volumes,—placed before us from the secretary of state's office,—together constitute the journal of the house. The one or the other is the journal required by law to be kept."

In *Re Roberts, supra,* the subject of controversy was the contents, not the identity, of the journals. Here the latter is the crux of the case. When the constitution was written no doubt seems to have entered the minds of its framers as to what constitutes the journal therein required to be kept by each branch of the general assembly. The word was used as if, by common knowledge, it was known what was meant. Its meaning is equally certain now. As applied to legislation, it is the official record of what "is done and passed in a legislative assembly." It is called the journal "because the proceed-

ings are entered therein in chronological order as they occur
from day to day; the business of each day forming the matter
of a complete record by itself." When we ascertain what
those acts and things were which the senate transcribed as a
record of its daily proceedings, we have its journal. While
the keeping of a journal or record of proceedings is an impera-
tive, constitutional requirement, nevertheless, as the form and
manner of keeping it is left wholly to the legislative body, that
which it makes and treats as its journal is essentially the jour-
nal of the constitution. Cushing's Law and Practice of Legis-
lative Assemblies, secs. 417, 422 and 423. Such is the hold-
ing in *Portland G. M. Co. v. Duke, supra*, where it is said:
"The 'journal' of the constitution is the record made by the
legislative body of its own proceedings. This record becomes
'the journal', when finally made by the proper officer or offi-
cers." Such also is the principle announced in In *Re Roberts,
supra.* In the latter case we pointed out that "from the mem-
oranda for journals," being the "original sheets of the clerk,
upon which minutes or memoranda of the daily proceedings
of the body are set down in the order of their occurrence,
partly in ink and partly in pencil, and in which are pasted the
partly printed and partly written reports, messages, or voting
lists or roll-calls of the houses,   *   *   *   the journals proper
are to be written out completely and historically." And we
therein further said: "To do this well, as it should be, and as
contemplated by the constitution directing it, would be prac-
tically impossible during the hours of work and confusion of
legislative proceedings. But after the day's adjournment, the
journal should be written up in proper shape, so that, if neces-
sary, they could be read each morning for correction and ap-
proval under the eye of the presiding officer and the whole
house, thus fitting them at once, and when it can best be done,
for publication, and as public records of the state archives."
We then admonished the legislature as follows: "In so im-
portant a matter as the constitutional requirement of keeping
journals of the general assembly, it is nearnestly to be hoped

that more careful attention will be given in future legislative proceedings."

Sometime thereafter the general assembly adopted rules relative to keeping its journals in substantial compliance with the suggestions so made. Moreover, such rules were in force at the time of the passage of the act in question, and "Exhibit 1" was made in conformity therewith.

Testing the separate documents presented as the journals of the general assembly, by the only means of identification that can be applied as hereinbefore stated, we have no doubt that the document in evidence as "Exhibit 1" is the senate journal of the constitution, and none other is. It is a large, well-bound book, printed in uniform type, as the rules require the journals shall be printed. It begins with the organization of the senate, shows the opening of each day's session thereof, purports to contain the business transacted, and closes with its adjournment. The record of each day's proceedings is signed and attested by the written signatures of the officers of the senate as required by the rules thereof. It shows the corrections of the journal which were made from day to day under the direction of the senate, in accordance with its rules. Its continuity is unbroken. Nothing could be inserted therein, or abstracted therefrom, without affording internal evidence of such fact, and no such evidence appears. A copy thereof was placed each morning on every senator's desk as the journal of the senate, and a like copy delivered to the governor and attorney general as prescribed by the rules. The original was preserved by the secretary of the senate, and was by him, at the close of the session, filed with the secretary of state as the official journal of the senate, as required by law.

On the other hand, the documents in evidence as "Exhibits B and F" have no such characteristics of authenticity. "Exhibit F" is a printed slip of the names of the members of the senate, alphabetically arranged, purporting to show the roll-call of the senate on May 5, 1911, of "H. B. No. 200 as amended," and which the evidence shows was at one time em-

bodied in, and formed a part of, "Exhibit B." The latter is a
bundle of loose, miscellaneous papers consisting of stenog-
raphic notes, typewritten extensions thereof, memorandum
roll-calls upon all kinds of motions and questions, including
final passage of bills. It is partly paged, partly unpaged and
partly repaged. It was not read to, or by the members of the
senate. Neither was it corrected and approved, nor signed and
certified as its journal, nor was it in any wise certified to the
secretary of state as the journal of the senate, but left with
him for storage.

Again, considering the two documents in juxtaposition,
there can be no question which document the senate kept,
treated, left, and filed as its journal. As said by counsel, the one
was read to the senate; the other was never read. The one
was corrected by the senate; the other was never corrected.
The one was approved by the senate; the other was never ap-
proved. The one was signed by the officers of the senate; the
other was signed by no one. The one was filed with the sec-
retary of state as the original and official journal; the other
was stored. The one shows on its face and for itself what it
purports to be; the other shows nothing on its face of what it
is, and requires parol testimony to identify and explain every
loose and varying scrap of paper of which it is composed. The
one is in permanent, durable form, and in condition to be pre-
served and used as the record; the other is a mere collection of
unbound and uncertain, and often incorrect memoranda. The
one was kept as the journal by the senate under its rules, in a
systematic, regular and formal manner; the other was not re-
garded by the senate as a record at all. A large number of
copies of the one has been published, under the authority of
law, by the secretary of state, at public, expense, distributed
to the public entitled thereto, and speaks to all the world as a
*prima facie,* correct copy of the original "Exhibit 1;" the
other neither was, nor could be, until corrected and amplified,
published so as to be intelligently understood.

While the value as evidence to be given legislative journals is always "a question for the courts, and will be affected by the internal evidence which such records furnish as to the system and completeness, or carelessness and slovenliness with which they have been kept," as said in the *Roberts* case, *supra*, nevertheless, "The journals cannot be aided or helped out by reference to the original papers and memoranda kept by the clerk and from which the journals proper were made up." Sutherland's Statutory Construction, Vol. 1, sec. 47.

If the original papers and memoranda kept by the clerks were accepted and treated by the legislative body as its journal, the courts will necessarily so accept it, and, if possible, gather therefrom facts sufficient to sustain the legislative act. However, a journal so kept would very likely be incomplete and unreliable, and entitled to but little weight as evidence. Indeed, it may be, if the uncertainty is so great and the incompleteness so apparent that the courts cannot say that the journal produced is intact as made, they will decline to accept it as evidence sufficient to overturn the *prima facie* validity of the act arising from the enrolled bill. The production of a document of such character might properly be held to be a mutilated journal, inadmissible in evidence for any purpose. Be that as it may, it is certain that a legislative journal as made, can neither be contradicted nor amplified by loose memoranda made by the clerical officers of such body. To these the courts can not look for any purpose.—*Ex parte Howard-Harrison Iron Co.*, 119 Ala. 484, 491.

In *Rio Grande S. Co. v. Catlin, supra*, we held that the office of a legislative journal is to record the proceedings of the body, and authenticate and preserve the same, and that such journal is the proper evidence of the action of the body upon all matters before it. And in *Andrews et al v. The People, supra*, we declared that "In determining whether the constitutional requirements with respect to the passage of bills have been complied with, resort can be had to the legislative journals. If it affirmatively appears therefrom, either ex-

pressly or by necessary implication, that the provisions of the constitution were not observed, then the bill is not valid."

Moreover, "Courts must have some means of knowing when bills are passed, and they must receive such knowledge through the medium of evidence. This they can only know through record evidence, furnished at the time, and by the departments entrusted with the law-making power. Whether bills have or have not become laws can only be known from the evidence, *which the journals* (or the legislative authenticated copies thereof) *and the original bill with its endorsements afford.*  *  *  *  Courts can never receive oral proof that a law has been adopted, or that any act essential to its validity has been performed." *People v. McCullough,* 210 Ill. 488, 513.

A like doctrine is announced in *Attorney General v. Rice,* 64 Mich. 385, 391, where it is said:

"Are these journals kept by the clerks of each house, and read and corrected each day by each body, and duly certified by the proper officers to be correct, to stand as conclusive evidence of their proceedings, or are they liable to be disputed and overthrown by parol testimony, either of individual officers and members, or of strangers, who may be interested in nullifying legislative action? It would seem that there could be but one answer. The legislative record must prevail. Any other ruling would necessarily lead to dangerous and alarming results."

And in *State ex rel. Attorney General v. Buckley,* 54 Ala. 600, 613, after propounding the question as to what intendments, if any, are to be indulged for or against the constitutionality of legislative enactments, it is answered as follows:

"On the question of the yeas and nays required to be spread on the journal, there can be no reasonable ground for doubt. The journal is the record which the legislature keeps, and is required to keep of its proceedings. Like all other records required by law to be kept, it imports verity. Taking

into account the character of the body whose record it is, a co-ordinate department of the government, we hold that it imports absolute, indisputable verity. The constitution, then, requiring that the yeas and nays shall be matter of record, no other evidence can be received of this requirement, nor can its wants be supplied by intendment. Of this fact the record (journal) must speak, and if silent, the fact, in legal contemplation, does not exist. The intendments, however, in reference to the other provisions of the constitution, * * * are different. The judicial department will presume compliance with them by the legislative department, unless the contrary is shown to be the case."

Notwithstanding the journals as made by the respective legislative bodies, import absolute verity, other evidence may be received to identify the journals.—*People v. Starne*, 35 Ill. 121, 139,—or to show that something which was once a part thereof has been removed, abstracted or lost therefrom, and for the purpose of restoring the same. Such is the *Portland G. M. Co. v. Duke, supra*, wherein it is said:

"We quite agree with the learned counsel for the mining company that parol evidence is not admissible to alter or contradict the record of a legislative body as actually made in its journal—in other words, that, if the journal contains the statement of a fact with respect to legislative proceedings, it is incompetent to prove *aliunde* that such statement is false. The validity of legislation can not be made subject to such precarious and uncertain tests. It must stand or fall by the record as actually made. Indeed, we might go further, and agree with learned counsel that silence in a legislative journal relative to a matter required to appear upon its face can not be explained, or its fatal consequences overcome, by parol testimony. The record as actually made must control. But these contentions are wide of the mark in this case. The question here is: What did the Senate Journal as actually made disclose? not what it appeared to disclose or not to disclose after adjournment of the legislature, or after the journal came to

the hands of the secretary of state, or after the same was pub-
lished by that functionary."

In that case a roll call, with the names of those voting
on the passage of the bill, was actually a part of the journal
as made. Parol evidence was permitted to show that it had
been at one time an integral part of the journal, and that the
journal was afterwards mutilated by abstracting the same
therefrom. In the case at bar the trial court found, and the
record conclusively shows, that neither the roll call nor an
entry of the names of the senators voting on the passage of
the bill, were ever, at any time, a part of the senate journal
as made.

"The bill may, in point of fact, have been read three several
times and on three different days, and the yeas and nays may
have been actually called on the second and third readings and
the presiding officers may have certified thereto; and yet, *if
the entry of the yeas and nays is not actually made on the
journal,* the constitution speaking with absolute clearness says
that the failure of such entry is *absolutely* fatal to the validity
of the act." *Commissioners v. Snuggs,* 121 N. C. 394, 399.

The constitution is the fundamental law measuring the
power of the general assembly, and creating and circumscrib-
ing that of the courts. Its provisions must be observed and
obeyed by all, and the necessities of the case can never justify
its overthrow by the courts. The people, in that instrument,
acting in their sovereign capacity, made it the duty of the
senate to keep a journal and to enter therein certain things
as a pre-requisite to the validity of any law. The senate kept
a journal but did not enter therein the things required by the
constitution to make the act in question a valid law. This
court can not make such entry for the senate. To do so would
be legislation, and such power is reserved in the people or
vested in the general assembly alone. If the courts can amend
the legislative journals to-day, and insert therein something
that was never there, to sustain a law, they have equal author-
ity to amend them to-morrow, and strike therefrom something

previously there, to overthrow a law. The sovereign people, in whom is vested all governmental power, have spoken in their organic law, and their mandate, so expressed, must be enforced by the courts, even though wise and beneficient attempted legislation is thereby defeated.

The judgment is, therefore affirmed.

*Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not participating.