## PORTLAND GOLD MINING CO. v. DUKE.

(Circuit Court of Appeals, Eighth Circuit. September 21, 1908.)

No. 2,510.

1. MASTER AND SERVANT — DUTIES DISTINGUISHED — NEGLIGENT DEPARTURE FROM REASONABLY SAFE METHOD OF WORK.

As between master and servant, the duty of so using a reasonably safe place, of so operating reasonably safe machinery, and of so conforming to an established and reasonably safe method of work, that injury will not be inflicted negligently, is the duty of those to whom the work is intrusted, and is no part of the positive duty of the master.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 266, 267.]

2. STATUTES—ENACTMENT—CONSTITUTIONAL REQUIREMENTS—ENTRY OF FINAL VOTE IN COLORADO.

The provision of Const. Colo. art. 5, § 22, that "no bill shall become a law * * * unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal," as construed by the Supreme Court of the state, is mandatory, and a failure to comply with it is fatal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 20.]

3. SAME—EXISTENCE OF PUBLIC STATUTE IS QUESTION OF LAW, AND CANNOT BE MADE AN ISSUE OF FACT BY THE PLEADINGS.

Whether or not a purported public statute is a law or is not a law is a question of law, which may be presented and determined in like manner as any other question of law is presented and determined, and it cannot be made an issue of fact by the pleadings.

4. SAME—COLORADO FELLOW SERVANT ACT OF 1901 NEVER BECAME A LAW.

The purported act of the Legislature of Colorado approved March 28, 1901 (Sess. Laws 1901, p. 161, c. 67, abrogating the fellow servant rule of the common law, never became a law, because, as held by the Supreme Court of the state in Rio Grande Sampling Co. v. Catlin, 40 Colo. 450, 94 Pac. 323, and as shown by the published legislative journals, of which judicial notice must be taken, the constitutional mandate relating to the entry of the vote upon the final passage of a bill was not observed in its enactment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 20.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Charles W. Waterman (Joel F. Vaile and Henry McAllister, Jr., on the brief), for plaintiff in error.

James A. Orr, Louis W. Cunningham, C. M. Hawkins, and H. M. Mason, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action to recover for personal injuries, and the principal question presented to us is whether the Circuit Court erred in refusing to direct a verdict for the defendant at the close of the evidence.

The injuries were sustained in a reduction mill which the defendant was operating in the state of Colorado, and in which the plaintiff was an employé. One of the appliances in the mill was a belt, with metallic cups thereon, whereby crushed ore was conveyed from a pit in the lower part of the mill to a higher part. Motion was communicated to this conveyor by the upper of the two pulleys around which it traveled, and near that pulley was a driving wheel, carried by the same shaft and driven by a power belt connecting with another shaft. The conveyor traveled very rapidly and when it became choked at the lower end, as was sometimes the case, it stopped suddenly and caused the power belt to slip off the driving wheel. On such occasions it was necessary to place the power belt upon the wheel again; and it was also the practice to stop the other machinery, loosen whatever was choking the conveyor, and start the machinery slowly, upon a signal from one of the workmen, while others lifted upon the conveyor to get it in motion. When this practice was followed the act of lifting upon the conveyor was not dangerous. It was while the plaintiff, in the proper discharge of his duties, was lifting upon the conveyor, in an attempt to get it in motion, that his injuries were sustained. The negligence charged against the defendant, so far as it needs to be here noticed, was stated in the complaint in this way:

"While plaintiff was discharging the duties of said employment, and while he was on the third floor or landing of said building, he was ordered and directed by the defendant to help start the elevator, which had become clogged and stopped, and while endeavoring to comply with said order, and while having hold of said elevator, and of the belt and buckets or cups constituting the same, and while endeavoring to loosen it, the said elevator was by the defendant, its officers, agents, servants, and employés, negligently started with great force and velocity, and without any notice or warning to, and without the knowledge of, plaintiff, whereby plaintiff was caught by said elevator, and by the buckets and cups and belt thereof, and was thrown and dragged with great force and violence upon, into, and through said elevator, thereby receiving the injuries hereinafter specified."

The plaintiff had assisted in this work on several occasions, in all of which the practice before recited was followed, and on this occasion he conducted himself as he had always done before. But the established practice was not followed this time. An employé in the lower part of the mill attempted to stop the other machinery in the usual way, but the rope provided for that purpose broke when he pulled it; and while the other machinery was moving at high speed other employés replaced the power belt upon the driving wheel without warn-

ing the plaintiff that the conveyor would start with unusual suddenness and rapidity, thereby making his position one of danger. They knew that the other machinery was moving at high speed; but its movement was not known to him, and was not readily observable by one in his position. He was acting in the belief that the established practice was being followed, and he had no reason to think otherwise. When the power belt was replaced, the rapid motion of the other machinery was instantly communicated to the conveyor, and it quickly caught him and inflicted serious injuries upon him. There was no evidence of any negligence in respect of the rope which broke, or in respect of any matter other than the replacing of the power belt, when the other machinery was moving at high speed, without any warning to the plaintiff of his peril. One of the men participating in and directing this work was a foreman in the mill; but there was no evidence tending to show that he was other than a fellow servant, within the proper definition of that term. See Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 384, 13 Sup. Ct. 914, 37 L. Ed. 772; Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; Westinghouse, etc., Co. v. Callaghan, 83 C. C. A. 669, 155 Fed. 397; Vilter Mfg. Co. v. Otte, 84 C. C. A. 673, 157 Fed. 230. Such was the case made by the evidence, if the conflicts therein and in the inferences reasonably to be drawn from different portions of it be resolved in favor of the plaintiff, as must be done in considering whether the case should have been taken from the jury.

This statement makes it plain that the only negligence shown was that of the plaintiff's fellow servants. Any other conclusion would contravene the settled rule that, as between master and servant, the duty of so using a reasonably safe place, of so operating reasonably safe machinery, and of so conforming to an established and reasonably safe method of work, that injury will not be inflicted negligently, is the duty of those to whom the work is intrusted, and is no part of the positive duty of the master. American Bridge Co. v. Seeds, 75 C. C. A. 407, 144 Fed. 605, 11 L. R. A. (N. S.) 1041; Kinnear Mfg. Co. v. Carlisle, 82 C. C. A. 81, 152 Fed. 933.

By the common law the master is not responsible for injuries sustained by a servant through the negligence of a fellow servant, and so we are brought to the question whether the common-law rule had been abrogated in Colorado. A purported act of the state Legislature approved March 28, 1901 (Sess. Laws 1901, p. 161, c. 67), which, if it be valid, may have had that effect, is relied upon by the plaintiff, but its validity is questioned by the defendant upon the ground that in its enactment a mandatory requirement of the state Constitution was not observed. Section 22 of article 5 of the Constitution of the state declares:

"And no bill shall become a law except by a vote of a majority of all the members elected to each house, nor unless on its final passage the vote be taken by ayes and noes and the names of those voting be entered on the journal."

The defendant asserts, and the plaintiff does not deny, that the requirement respecting the entry of the vote upon the final passage

was not observed, and to sustain its assertion the defendant calls attention to the pertinent portions of the published legislative journals, which a law of the state declares—

"shall be taken and held as prima facie evidence of the original records." Sess. Laws 1893, p. 240, c. 109.

Whether the requirement respecting the entry of the vote on final passage is directory or mandatory, and whether a failure to comply with it, if shown by the legislative journals, prevents the act from becoming a law, are questions relating to the construction and application of the state Constitution, upon which the decision of the Supreme Court of the state is controlling. Town of South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204; School District v. Chapman, 82 C. C. A. 35, 152 Fed. 887. These questions were presented to that court in the case of Rio Grande Sampling Co. v. Catlin, 40 Colo. 450, 94 Pac. 323, wherein the validity of the act now before us was in question, and in a decision en banc, adhered to upon a petition for a rehearing, it was held that the requirement is mandatory; that a failure to comply with it, if shown by the legislative journals, is fatal; that it appears from the published journals that it was not complied with in respect of this act; and that an attempt made by a succeeding session of the Legislature to correct the error was ineffectual. In this situation, and especially as there is no claim that the published journals are not correct or complete reproductions of the original records, and as an inspection of the published journals shows that they sustain the decision of the Supreme Court of the state, it would seem that our duty is altogether plain.

But it is urged by the plaintiff that the existence of the act is not in question in this case, because it was not put in issue by the defendant's answer. It is true that the answer is silent in that regard, but that is also true of the plaintiff's complaint. Possibly the silence of the answer may be accounted for on the theory that there was no occasion for the defendant to controvert what was not affirmed by the plaintiff; but a better explanation of the silence of the pleadings of both is that the question of the existence of a public statute is one of law and cannot be made an issue of fact by the pleadings. It must be conceded, however, that the plaintiff's contention has support in decisions of the Supreme Court of Colorado, which follow and apply like decisions of the Supreme Court of Illinois; but as this practice in the state of Colorado is not grounded upon any constitutional or statutory provision, it is not obligatory upon the federal courts. Such is the rule of decision in the Supreme Court of the United States, where the question has been much considered in cases taken to that court on error to the federal courts in Illinois. Town of South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204. In the first of these cases it was said:

"That which purports to be a law of a state is a law, or it is not a law, according as the truth of the fact may be, and not according to the shifting circumstances of parties. It would be an intolerable state of things if a document purporting to be an act of the Legislature could thus be a law in one

case and for one party, and not a law in another case and for another party; a law to-day and not a law to-morrow; a law in one place and not a law in another, in the same state. And whether it be a law, or not a law, is a judicial question, to be settled and determined by the courts and judges. * * * But the law under consideration has been passed upon by the Supreme Court of Illinois, and held to be invalid. This ought to have been sufficient to have governed the action of the court below. In our judgment it was not necessary to have raised an issue on the subject, except by demurrer to the declaration. The court is bound to know the law, without taking the advice of a jury on the subject. When once it became the settled construction of the Constitution of Illinois that no act can be deemed a valid law unless by the journals of the Legislature it appears to have been regularly passed by both houses, it became the duty of the courts to take judicial notice of the journal entries in that regard. The courts of Illinois may decline to take that trouble, unless parties bring the matter to their attention; but, on general principles, the question as to the existence of a law is a judicial one, and must be so regarded by the courts of the United States. This subject was fully discussed in Gardner v. Collector. After examining the authorities, the court in that case lays down this general conclusion: 'That whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question, always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule.' 6 Wall. 511, 18 L. Ed. 890. Of course, any particular state may, by its Constitution and laws, prescribe what shall be conclusive evidence of the existence or nonexistence of a statute; but, the question of such existence or nonexistence being a judicial one in its nature, the mode of ascertaining and using that evidence must rest in the sound discretion of the court on which the duty in any particular case is imposed. Not only the courts, but individuals, are bound to know the law, and cannot be received to plead ignorance of it."

The controlling character of that decision is not weakened, but strengthened, by the fact that there was a dissenting opinion, in which the dissenting justices, while conceding that the view of the majority was probably more logical, took the position that the decisions of the Supreme Court of Illinois had made the question of the existence of the statute one of fact, and not of law. A later case recognizing the same general rule is Jones v. United States, 137 U. S. 202, 214, 216, 11 Sup. Ct. 80, 84, 85, 34 L. Ed. 691, where it is said:

"All courts of justice are bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government whose laws they administer, or of its recognition or denial of the sovereignty of a foreign power, as appearing from the public acts of the Legislature and executive, although those acts are not formally put in evidence, nor in accord with the pleadings."

And again:

"In the ascertainment of any facts of which they are bound to take judicial notice, as in the decision of matters of law which it is their office to know, the judges may refresh their memory and inform their conscience from such sources as they deem most trustworthy. Gresley, Eq. Ev., pt. 3, c. 1; Fremont v. United States, 17 How. 542, 557, 15 L. Ed. 241; Brown v. Piper, 91 U. S. 37, 42, 23 L. Ed. 200; State v. Wagner, 61 Maine, 178. Upon the question of the existence of a public statute, or of the date when it took effect, they may consult the original roll or other official records. Spring v. Eve, 2 Mod. 240; 1 Hale's Hist. Com. Law (5th Ed.) 19–21; Gardner v. Collector, 6 Wall. 419, 18 L. Ed. 890; South Ottawa v. Perkins, 94 U. S. 260, 267–269, 277, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204. As to international

affairs, such as the recognition of a foreign government, or of the diplomatic character of a person claiming to be its representative, they may inquire of the Foreign Office or the Department of State. Taylor v. Barclay, 2 Sim. 213; The Charkieh, L. R. 4 Ad. & Ec. 59, 74, 86; Ex parte Hitz, 111 U. S. 766, 4 Sup. Ct. 698, 28 L. Ed. 592; In re Baiz, 135 U. S. 403, 10 Sup. Ct. 854, 34 L. Ed. 222."

The rule so stated is now also the prevailing one in the state courts, as is shown in Sutherland on Statutory Construction (2d Ed.) §§ 57–59, where the cases are collected. It will suffice to refer to one in which Mr. Justice Marshall, speaking for the Supreme Court of Wisconsin, uses this concise language:

"It must be understood that, when the existence or the contents of a statute are called in question, no issue of fact is presented for a trial upon the evidence; but the court, whether one of original or appellate jurisdiction, must necessarily decide the question the same as it decides any other question of law." Milwaukee County v. Isenring, 109 Wis. 8, 26, 85 N. W. 131, 137, 53 L. R. A. 635.

We conclude that, notwithstanding its failure to put the existence of the act upon which the plaintiff relies in issue by its answer, the defendant was entitled to raise that question, and to invoke a decision thereof, in like manner as it was entitled to raise, and invoke a decision of, any other question of law necessarily involved in a determination of its asserted right to a directed verdict at the close of the evidence. Rightly considered, the second ground of its request for such a direction contained two propositions: One, that there was no right of recovery, unless there was negligence on its part; and the other, that there was no evidence of any such negligence. By that request the plaintiff's right to recover for injuries sustained solely through the negligence of his fellow servants was as effectually challenged as it would have been if the facts had been correctly stated in the complaint and the defendant had challenged its sufficiency by a demurrer. The adverse ruling upon that request involved an affirmation of the exis‧tence of a law giving a right of recovery in such a case quite as certainly as would a like ruling upon such a demurrer. But, as we have seen, there was no such law in existence; the act relied upon by the plaintiff never having become a law, because not enacted in conformity with the constitutional mandate. We cannot give effect to the enrolled and published act, to which our attention is directed by the plaintiff, and refuse to give effect to the legislative journals, to which our attention is directed by the defendant, when both are properly within our judicial notice and when the journal entries are made by the Constitution, as interpreted by the Supreme Court of the state, the controlling criteria in determining whether the act became a law.

As there was no evidence of any negligence to the part of the defendant, and as there was no law of the state abrogating the fellow-servant rule of the common law, it follows that a verdict for the defendant should have been directed, as was requested.

This conclusion renders it unnecessary to consider other questions discussed in the briefs, namely, whether it was admissible for the plaintiff to so state his cause of action in a single count as to ground it upon both the common law and the statute—that is, upon the negligence of both the defendant and the plaintiff's fellow servants; whether the

allegations of the complaint were sufficiently specific and full to state a cause of action under the statute; and whether the irregularities and infirmities, if any, in the complaint, were waived by a failure to take timely advantage of them.

The judgment is reversed, with a direction to grant a new trial.