### PORTLAND GOLD MINING CO. v. DUKE.

(Circuit Court of Appeals, Eighth Circuit. November 21, 1911.)

No. 2,510.

1. EVIDENCE (§ 383*)—LEGISLATIVE PROCEEDINGS—PUBLISHED JOURNALS—COLORADO STATUTE.

Sess. Laws Colo. 1899, p. 240, in providing that the original journals of the Senate and House of Representatives shall be deposited with the Secretary of State, and that copies thereof shall be published, which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"shall be taken and held as prima facie evidence of the original records," carries an implication that such published journals are not conclusive evidence, and that the presumption of their accuracy may be overcome by any other competent and satisfactory proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1661, 1662; Dec. Dig. § 383.*]

2. EVIDENCE (§ 387*)—PAROL EVIDENCE TO CONTRADICT WRITING—LEGISLATIVE JOURNAL.

Parol evidence is not admissible to alter or contradict the record of a legislative body as actually made in its journal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1699; Dec. Dig. § 387.*]

3. STATUTES (§ 58*)—VALIDITY OF ENACTMENT—JUDICIAL AUTHORITY AND DUTY TO DETERMINE.

Whether a purported public statute became a law in the manner prescribed by the Constitution of the state is a judicial question, to be determined by the court, and arises whenever the act is drawn in question, whether made an issue by pleading or not.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 53, 54; Dec. Dig. § 58.*]

4. STATUTES (§ 60*)—DETERMINATION OF VALIDITY OF ENACTMENT—EVIDENCE.

Where it became necessary for a court to determine whether or not a purported statute was legally enacted, and the journal of one of the houses failed to show that a constitutional provision requiring the final vote to be taken by ayes and noes and the names of those voting to be entered had been complied with, it was competent for the court to consider parol evidence that, as originally written, the journal showed a full compliance with such requirement, but that the page containing such record had been abstracted after the Legislature adjourned, and to give effect to such record, when found and satisfactorily identified.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 55; Dec. Dig. § 60.*]

5. STATUTES (§ 37*)—JOURNALS—DEPOSIT WITH SECRETARY OF STATE.

Under Const. Colo. art. 4, § 11, which provides that "every bill passed by the General Assembly shall, before it becomes a law, be presented to the Governor. If he approves he shall sign it, and thereupon it shall become a law"—it is not essential to the taking effect of an act that the journals of the two houses, showing that it was passed in compliance with the constitutional requirements, must have been deposited in the office of the Secretary of State, which by another provision is required to be done within 10 days after the Legislature adjourns.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 37.*]

6. STATUTES (§ 11*)—VALIDITY OF ENACTMENT—COLORADO FELLOW SERVANT ACT.

Sess. Laws Colo. 1901, p. 161, abrogating the fellow-servant rule of the common law, was constitutionally enacted, and is a valid law of the state.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 11.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Action at law by Andrew Duke against the Portland Gold Mining Company. Judgment for plaintiff, and defendant brings error. On rehearing. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles W. Waterman (Joel F. Vaile and Henry McAllister, Jr., on the brief), for plaintiff in error.

James A. Orr (Louis W. Cunningham, C. M. Hawkins, and H. M. Mason, on the brief), for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge. This was an action by a servant to recover damages from the master for personal injuries alleged to have been sustained by him as a result of the master's negligence. The case has been here before, and is reported in 90 C. C. A. 166, 164 Fed. 180, to which reference may be made for a more extended statement.

The plaintiff then contended that the evidence was sufficient to warrant a recovery on common-law principles, without resort to the remedial provisions of the statute of Colorado (known as the fellow servant act) approved March 28, 1901 (Sess. Laws 1901, p. 161), whereby the common-law rule exonerating a master from liability for injuries sustained by a servant occasioned by the negligence of a fellow servant was abolished, and also contended that, if the injurious act turned out to be the negligent act of a fellow servant, the defendant was liable under that statute also. We then concluded that plaintiff was wrong in his first contention; in other words, that the proof did not warrant recovery at common law, saying:

"This statement [referring to what preceded] makes it plain that the only negligence shown was that of the plaintiff's fellow servants. * * * So we are brought to the question whether the common-law rule had been abrogated in Colorado."

The defendant contended that because the published journal of the Senate, to which the court's attention was called, did not disclose that, on the final passage of the act of 1901, the vote was taken by ayes and noes, or that the names of those voting were entered on the journal, the act as printed in the Session Laws for that year did not become a law of the state. Attention was called to section 22, art. 5, of the Constitution of Colorado, which ordains as follows:

"And no bill shall become a law except by a vote of a majority of all the members elected to each house, nor unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal."

We held that, in the absence of any showing to the contrary, the Senate Journal, which was prima facie evidence of the original records (Sess. Laws Colo. 1899, p. 240), disclosed a failure to pass the act in question according to the requirement of the Constitution, and that it did not appear to be a law of the state, and therefore that under neither of the plaintiff's theories could he recover.

Soon after the case of Kyner v. Portland Gold Min. Co., 106 C. C. A. 245, 184 Fed. 43, grounded on the same supposed act of 1901, came on to be heard in this court, and, representations being made to us that the constitutional requirement respecting the entry of the

vote upon its final passage was in fact fully observed by the Senate, we, for the purpose of enlightening ourselves upon a matter of which we were required to take judicial cognizance, appointed of our own motion a commissioner to take the evidence of what actually occurred in the passage of the act. He took and returned into court all available evidence on the subject; and, while that proceeding was going on, a motion for rehearing was made in this case, in which we were asked to again consider the question of the constitutionality of the act of 1901 in the light of such information as we might secure from the report of the commissioner so appointed or from other sources. Whereupon the following order was made:

"This cause came on this day to be heard upon the question presented by the petition of defendant in error for a rehearing, and reserved for further consideration by this court, by the order entered herein on the 2d day of December, A. D. 1908. On consideration whereof, it is now here ordered by this court that a rehearing be, and is hereby, granted upon the question that the court, in passing upon the existence and validity of the purported act of March 28, 1901 (Sess. Laws Colo. 1901, c. 67, p. 161), should have taken judicial notice of matters other than the published legislative journals of 1901, and upon all questions in the case whose decisions may become necessary if such act be held to be a law, and upon no other questions."

Upon this order it is conceived the only matters open for our present consideration are these: Could the court, in passing upon the existence and validity of the act of 1901, take judicial knowledge of anything else than the published legislative journals of the Assembly of 1901. If so, and if the act be determined to be lawful, what effect should be given to it in the present case?

[1] It was determined by our former judgment, following that of the Supreme Court of Colorado in the case of Rio Grande S. Co. v. Catlin, 40 Colo. 450, 94 Pac. 323, that the constitutional provision that "no bill shall become a law * * * unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal" was mandatory, and that unless its provisions were observed the attempted enactment failed to become a law. But we did not hold that the only possible proof of conformity to the constitutional requirement was the journal as published by the Secretary of State. The law of the state (Sess. Laws 1899, p. 240) required the original journals of the Senate and House of Representatives, with copies thereof, to be deposited with the Secretary of State within 10 days after adjournment of the Legislature and 500 copies of the journals of each house to be published as soon as practicable thereafter, and provided that the journals so published "shall be taken and held as prima facie evidence of the original records" (page 241). This provision seems to carry a necessary implication that the published journals are prima facie evidence only of the records as made, and accordingly that the presumption of their accuracy may be overcome by any other competent and satisfactory proof.

[2] We quite agree with the learned counsel for the mining company that parol evidence is not admissible to alter or contradict the record of a legislative body as actually made in its journal—in other

words, that, if the journal contains the statement of a fact with respect to legislative proceedings, it is incompetent to prove aliunde that such statement is false. The validity of legislation cannot be made subject to such precarious and uncertain tests. It must stand or fall by the record as actually made. Indeed, we might go further, and agree with learned counsel that silence in a legislative journal relative to a matter required to appear upon its face cannot be explained, or its fatal consequences overcome, by parol testimony. The record as actually made must control. But these contentions are wide of the mark in this case. The question here is: What did the Senate Journal as actually made disclose? not what it appeared to disclose or not to disclose after adjournment of the Legislature, or after the journal came to the hands of the Secretary of State, or after the same was published by that functionary. Proof of what subsequently appeared in it may under some circumstances be evidence of what the original entry was, so far, and so far, only, however, as it tends to elucidate what entry was actually and finally made by authority of the legislative body.

[3] Did this bill become a law in the manner prescribed by the Constitution of the state? Whether it did or not is a judicial question, to be determined by the court, and arises whenever the act is drawn in question, whether made an issue by pleading or not. Portland Gold Min. Co. v. Duke, supra; Town of South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204; Jones v. United States, 137 U. S. 202, 214, 216, 11 Sup. Ct. 80, 34 L. Ed. 691.

"Whenever a question arises in a court of law, either of the existence of a statute, of the time when a statute took effect, or of the precise terms of a statute, the judges, who are called upon to decide it, have a right to resort to any sources of information which, in its nature, is capable of conveying to the judicial mind a clear and satisfactory answer to such question, always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule." Gardner v. The Collector, 6 Wall. 499, 511, 18 L. Ed. 890; South Ottawa v. Perkins, supra.

"In the ascertainment of any facts of which they are bound to take judicial notice, as in the decision of matters of law which it is their office to know, the judges may refresh their memory and inform their conscience from such sources as they deem most trustworthy." Jones v. United States, supra.

In view of the law thus declared, we are at liberty to resort to the report made by the commissioner appointed in the Kyner Case for the enlightenment of our judicial understanding on the question whether the act of 1901 became and is a law of the state.

[4] The facts so brought to our attention make it very clear, and we so find, that the requirement of the Constitution of the state was observed with scrupulous fidelity in the passage of that act. A sheet, containing a record of a roll call on the bill in question, the vote taken by ayes and noes on it, and the names of those so voting entered thereon, undoubtedly was incorporated in and formed a page of the Senate Journal of February 4, 1901, the thirty-fourth legislative day of the session, as originally made. This page remained in the journal from the date of its entry until after the final adjournment of the

Senate. That it was afterwards abstracted from its proper place in the journal appears conclusively from the fact that it was once there and afterwards was found elsewhere. There is also a strong probability that the original sheet showing the roll call, which was afterwards found and identified, had been so abstracted, arising from the appearance of the sheet itself and the original journal. The slit or tear in the upper edge of the sheet corresponds exactly with the location of the thread which temporarily bound all the sheets constituting the journal together. This, with the identity and continuity of the subject-matter of the two, strongly corroborates the conclusion reached from the oral testimony to which we have had access, and with it all, leads to the inevitable conclusion that the act was constitutionally passed and that an attempt was made to defeat its operation by mutilation of the record.

[5] We perceive no warrant for the contention of defendant's counsel that, before a bill duly passed by the two branches of the Legislature can become a law, the journals of the houses showing compliance with the constitutional requirements must have been deposited in the office of the Secretary of State. The Constitution of the state does not so ordain. On the contrary, it provides (article 4, § 11) that:

"Every bill passed by the General Assembly shall, before it becomes a law, be presented to the Governor. If he approve he shall sign it, and thereupon it shall become a law. * * *"

The act of 1901 appears to have been approved and signed by the Governor on March 28, 1901, three days before the Assembly adjourned, and necessarily before the original journals were required to be or could be deposited with the Secretary of State.

[6] The "journal" of the Constitution is the record made by the legislative body of its own proceedings. This record becomes "the journal," when finally made by the proper officer or officers, without any regard to the time when it is delivered to the Secretary of State for printing or custody. It is immaterial to our present inquiry by whom or for what purpose this record was abstracted. Our duty ends when we find, as we do, that the act in question was duly and constitutionally enacted and is a law of the state of Colorado. Having reached the conclusion just stated, it is unnecessary to consider the effect of the confirmatory resolution of 1902, which received the attention of the Supreme Court of Colorado in the Catlin Case, supra.

According to the order granting a new trial, we are now required to pass upon any other question in the case necessarily to be determined in view of the fact that the act in question became a law.

It is contended by learned counsel for the defendant that even if the act of 1901 is a law of the state, and subjects a master to liability to the servant for negligent acts of his fellow servant, the complaint in this case fails to state a cause of action coming within that law. The law reads thus:

"Be it enacted by the General Assembly of the state of Colorado:

"Section 1. That every corporation, company or individual who may employ agents, servants or employés, such agents, servants or employés being in the exercise of due care, shall be liable to respond in damages for injuries

or death sustained by any such agent, employé or servant, resulting from the carelessness, omission of duty or negligence of such employer, or which may have resulted from carelessness, omission of duty or negligence of any other agent, servant or employé of the said employer, in the same manner and to the same extent as if the carelessness, omission of duty or negligence causing the injury or death was that of the employer."

It is contended that there should have been an allegation in the complaint that plaintiff was "in the exercise of due care" when he received the injury, and that there should have been other allegations disclosing clearly that plaintiff intended to plant his right of recovery upon the statute. On the other hand, it is contended that the requirement that plaintiff should have been "in the exercise of due care" only expresses the legislative intent that the common-law defense of contributory negligence should be preserved, and that the complaint in general terms sufficiently discloses an intention to invoke the provisions of the statute. These questions, in our opinion, are not open ones. They were foreclosed at the former hearing. Unless the complaint was deemed sufficient to justify recovery for the negligent act of a fellow servant, there was no occasion for considering or deciding the question whether the act of 1901, according to its appearance in the published journal of the Senate, became a law. Neither was there any occasion for a second consideration of that question upon information which might be acquired from the report of the commissioner as ordered on the motion for rehearing. But we are not left to inferences alone on this question. Speaking by Van Devanter, Circuit Judge, now Circuit Justice, this court said in its former opinion:

"*  *  * This conclusion renders it unnecessary to consider other questions discussed in the briefs, namely, *whether it was admissible for the plaintiff to state his cause of action in a single count as to ground it upon both the common law and the statute—that is, upon the negligence of both the defendant and the plaintiff's fellow servants.*"

The fair implication of this observation and the necessary logic of our former action is that two causes of action, one at common law and one under the statute, were blended in plaintiff's complaint in one and the same count; in other words, that the substance of a cause of action under the statute was stated, however inartificially it may have been done. Even if we felt at liberty to do so, we should be indisposed to take any different view of that pleading.

Although this is so, we cannot now satisfactorily dispose of the case on the merits. Even if the complaint stated a cause of action based on the negligence of a fellow servant, the case was not tried below on that theory. The charge of the court shows that the jury was not instructed on that issue at all, and we are not prepared to say that the verdict would have been as it was if the proper instruction had been given on each of the two theories of liability presented by the complaint. We think it better to let the order of reversal already made stand, and to remand the cause to the Circuit Court, with directions to grant a new trial and to permit the plaintiff to amend his petition, so as to ground his action definitely upon the act of 1901, if he so desires.

It is so ordered.