[No. 3301.]

## COLORADO & SOUTHERN RAILWAY CO. v. DAVIS.

1. CONSTITUTIONAL LAW—*Particular Statutes.* The employers' liability act of 1901 (Laws 1901, c. 67) is not in conflict with either the federal or state constitution.

2. EVIDENCE—*Cross-Examination.* The question being whether a certain statute appearing among the published laws (Laws 1901, c. 67) was regularly passed, the deputy-secretary of state was called and produced a manuscript journal of the senate showing, variant from the printed journal, the regular passage of the bill. Held that the party drawing in question the enactment was entitled to cross-examine the witness in order to show that the paper produced was a forgery.

3. —— *Conclusively Contradicted by Physical Conditions,* is to be rejected.

4. PRECEDENTS—*Judgment of Federal Court.* The question being as to the regularity of the passage of a certain statute appearing among the printed laws, adopted the decision of the circuit court of appeals of the United States in another case (Portland Co. v. Duke, 191 Fed. 692) as decisive of the issue; though it was said that the judgment of that court was not conclusive in this court, but only persuasive.

5. INSTRUCTIONS—*Predicated Upon False Testimony.* An instruction

predicated upon the acceptance by the jury of testimony which is conclusively contradicted by physical conditions, is error.

6. —— *Invading Province of Jury.* An instruction which declares that to be negligence, which is only evidence of negligence, is error.

*Appeal from Denver District Court.* Hon. Samuel L. Carpenter, Judge.

Messrs. Dines, Whitted & Dines, Mr. J. G. Mc-Murry, for appellant.

Messrs. Tolles & Cobbey, for appellee.

King, J., delivered the opinion of the court.

This cause was before this court upon a motion to remand it to the supreme court for the reason, as assigned, that a decision necessarily involves the construction of certain provisions of the constitution of the state, as well as of the United States. The motion was denied. *Colorado & Southern Ry. Co. v. Davis,* 120 Pac., 1048. The same constitutional question were urged at the trial and overruled, exceptions taken and error assigned.

The first question raised was that chapter 67 of the 1901 session laws is in conflict with the provisions of the fifth and fourteenth amendments to the constitution of the United States, and with section 25 of article II of the constitution of this state. The act has been held constitutional in the following cases: *Vindicator Con. Gold Mining Co. v. Firstbrook,* 36 Colo., 498; *Rio Grande Sampling Co. v. Catlin,* 40 Colo., 450.

The second question raised was that the act was invalid because, in its final passage through the senate, the provisions of section 22 of article V of the state constitution had not been observed, in that the vote thereon had not been taken by ayes and noes and the names of those voting entered upon the journal of the senate. The senate journal was offered in evidence by the defendant in

support of its contention. To rebut this, plaintiff called the deputy secretary of state and had him produce a manuscript journal of the senate, from which it appeared that the ayes and noes were taken. The court refused to allow appellant to cross-examine the secretary of state upon this manuscript or to otherwise impeach it by showing that the same was a forgery, etc., but held that it imported absolute verity. We think the cross-examination should have been allowed and evidence received. But that question has been before the federal courts for consideration for a number of years, and in the case of *Kyner v. Portland Gold Mining Co.*, 184 Fed., 43, the circuit court of appeals (eighth circuit) appointed a commissioner to take evidence of what actually occurred in the passage of the act, and the testimony so taken was considered in *Portland Gold Mining Co. v. Duke*, 191 Fed., 692, whereupon the court found as follows:

"The facts so brought to our attention make it very clear, and we so find, that the requirement of the constitution of the state was observed with scrupulous fidelity in the passage of that act. A sheet, containing a record of a roll call on the bill in question, the vote taken by ayes and noes on it, and the names of those so voting entered thereon, undoubtedly was incorporated in, and formed a page of, the senate journal of February 4, 1901, the thirty-fourth legislative day of the session, as originally made. This page remained in the journal from the date of its entry until after the final adjournment of the senate. That it was afterwards abstracted from its proper place in the journal appears conclusively from the fact that it was once there and afterwards was found elsewhere. There is also a strong probability that the original sheet showing the roll call, which was afterwards found and identified, had been so abstracted, arising from the appearance of the sheet itself and the original journal. The

slit or tear in the upper edge of the sheet corresponds exactly with the location of the thread which temporarily bound all the sheets constituting the journal together. This, with the identity and continuity of the subject-matter of the two, strongly corroborates the conclusion reached from the oral testimony to which we have had access, and with it all, leads to the inevitable conclusion that the act was constitutionally passed and that an attempt was made to defeat its operation by mutilation of the record.''

The decision of the federal court is not necessarily binding nor conclusive upon this court, but it is persuasive and will be adopted as decisive of that issue. This being done, the constitutional questions are solved, the act sustained, and further consideration of the contention made by the appellant herein, that the alleged negligent act complained of was that of a fellow servant of plaintiff, is eliminated.

Plaintiff was an employe of the appellant, The Colorado & Southern Railway Company, and was directed by a foreman in its shops to assist other employes, including a machinist, in putting together two separate parts of an iron frame, to be attached to a locomotive then being set up in the shops. One part was already bolted to the engine. The other was lying on its side, on boxes, in such position that it must be moved forward a few inches before being fitted into place. The pieces of frame were so made that when joined together they dovetailed, or fitted one into the other, and were to be held in place by bolts through the pieces at several points of intersection. Plaintiff's duty appears to have been to assist in raising the piece of frame on the boxes so that it would stand upon edge, and so hold it that when pushed forward by the machinist by the use of a pinchbar, it would pass alongside the portion of the frame attached to the engine

until it reached a point where it would enter that part of the frame into which it was to be fitted, then to be moved laterally into the opening in the other piece of frame, after which it must be moved directly forward a few inches further to its resting place.

The complaint charges that the machinist directed plaintiff to hold up and guide said piece of frame to one side of the said piece of frame not held by plaintiff, until the piece of frame held by plaintiff was even with the full length of the opening in the piece of frame not held by plaintiff, into which the piece held by plaintiff was to be fitted; that to keep said piece of frame held by plaintiff out of said opening in the piece not held by plaintiff until it should be along the side of and even therewith, the said machinist left or put a bolt in the front part of the piece not held by plaintiff, and the opening therein, to prevent the piece of frame held by plaintiff from entering said opening when it should be pushed and driven forward; "that thereafter, and just as said machinist had placed himself at the back end of the said piece of frame held by plaintiff, for the purpose of pushing and driving it forward into said opening in the piece of frame not held by plaintiff," the foreman removed the bolt; that the piece of frame was pushed instantly forward, without warning, and into the opening of the piece of frame not held by plaintiff, from which the foreman had "negligently and carelessly removed said bolt," whereby the thumb of plaintiff's hand was, without his fault, caught between the two pieces of frame and injured.

Plaintiff testified that immediately before the frame was pushed forward, causing the injury, the upper arm thereof rested above the upper arm of the portion that was bolted to the engine; that the bolt mentioned had been dropped through a hole in the upper arm of the fixed piece so that an eye on the head of said bolt above

said arm would afford the obstruction which he claims was intended to prevent, and would have prevented, the two pieces of frame coming together, whether moved in the same plane, or to one side, as he understood it was to be moved. The frame to be moved was of iron about eighteen feet in length, extending from the fixed piece on the front of the engine backward along the engine for that distance. Its upper and lower rails or arms were to be fitted and bolted to corresponding arms on the fixed part of the frame. ·Plaintiff testified that after he had raised the frame upon edge as directed, the machinist dropped the bolt into the hole, saying that it was put there to keep the arm of the rear frame out of the opening in the other, so that it would go past; that the foreman was not present at that time, but came along and removed the bolt just as the machinist gave the forward impetus to the frame. The evidence on all material matters was sharply conflicting. The plaintiff illustrated his statements by use of a model of the frame made by him but admitted to be incorrect, and for that reason excluded as an exhibit.

The defendant demonstrated, by the use of a model prepared by it and admitted to be correct, that it was impossible for the two pieces of frame, between which plaintiff's hand was caught, to come together in the position and under the circumstances so testified to by plaintiff; that before these two uprights could come together, the upper arm of the rear piece of frame must be underneath the upper arm of the front piece, and the two pieces practically in the same vertical plane, in which position the bolt and eye on the upper arm of the front piece could have no possible effect to prevent the pieces coming together; and further, that it would be impossible in that position to move the rear piece forward at the side of the part bolted to the engine, as claimed by plain-

tiff. In other words, it demonstrated the physical impossibility of the accident's having been caused in the manner and under the circumstances testified to by plaintiff. Plaintiff's testimony cannot be accepted as true wherein it is conclusively disputed by physical conditions.

So much of the testimony is stated for the purpose of throwing light upon the court's instruction, to the giving of which error is assigned. Among other things the court instructed the jury as follows:

"If you believe from the evidence, by a preponderance thereof, that the bolt was in the piece of frame not held by plaintiff, as testified to by the plaintiff, and that if it had been permitted to remain there would have prevented the happening of the injury to plaintiff; and if you further believe from the evidence, by a preponderance thereof, that the foreman removed it at the time and under the circumstances claimed by the plaintiff in his testimony, then such removal was negligence, and if such removal caused the injury to plaintiff, without his contributing thereto by his own negligence, then the plaintiff is entitled to recover."

In view of the conflict in the evidence, including the impossibility of the accident's having occurred under the circumstances and conditions set forth in plaintiff's complaint, and by his testimony, we think the court erred in instructing the jury that the removal of the bolt by the foreman was negligence, even as qualified by the statement that it was only such if removed at the time and under the circumstances claimed by plaintiff in his testimony. An instruction cannot be predicated upon the jury's belief of plaintiff's testimony which is conclusively refuted by physical facts. A palpable vice in the instruction is that it omitted to instruct the jury that in addition to finding that the bolt was in the piece of frame as testified to by plaintiff, they must also find that it had been

placed there for the purpose of keeping the frame out of the opening, as also testified to by him, and that he had been so advised; and further, that the foreman knew, or ought to have known or understood, that the bolt was there for that purpose, and that its removal would imperil the plaintiff. The instruction places the entire question of defendant's negligence upon the presence of the bolt where, if it had remained, the injury would not have occurred, and its removal by the foreman, and declares that such removal, under the circumstances claimed by plaintiff in his testimony, constituted negligence. It was nothing more than evidence of negligence. The question to be determined was whether, under the circumstances alleged to exist, and which the testimony tended to establish, an ordinarily prudent and careful man would have removed the bolt, conceding that it had been placed as, and for the purpose alleged. The instruction of the court was a withdrawal from the jury of that question. To determine whether the foreman was negligent involved two inquiries: First, what would have been ordinary care under the circumstances; second, whether the conduct of the foreman came up to that standard. If the standard is variable, it must be found by the jury. *Williams v. Sleepy Hollow M. Co.,* 37 Colo., 62; *N. Penn. R. R. v. Heilman,* 49 Pa., 63. We think it cannot be said that the standard of ordinary care, as applied to the foreman's conduct, was fixed, invariable, and therefore for the court instead of the jury. The general rule is that negligence is a question for the jury. The exception is that negligence is a question for the court, only when but one conclusion can be drawn from the evidence. If intelligent men may honestly differ, the question must go to the jury. *Lord v. Pueblo S. & R. Co.,* 12 Colo., 390, 393; *Colorado & Southern Ry. Co. v. Lauter,* 121 Pac., 137, 140; *Colorado Central R. R. Co. v. Martin,* 7 Colo., 592;

*Solly v. Clayton,* 12 Colo., 30; *D. & R. G. R. R. Co. v. Spencer,* 27 Colo., 313.

We do not hold nor intimate that under some conditions the court may not instruct the jury that if a certain state of facts is found to exist, it establishes negligence. We do hold that under the circumstances in this case, the foregoing instruction was erroneous, the facts·being such that reasonable men might honestly differ upon the question as to whether or not the defendant was guilty of negligence in failing to exercise ordinary care and prudence.

Other assignments of error will not be discussed. The judgment is reversed and the cause remanded.

MORGAN, J., not participating.